IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JAVIER GUERRA, §<br>    #49834-177, §<br>        MOVANT, §<br> §<br>V. §<br> §<br>UNITED STATES OF AMERICA, §<br>        RESPONDENT. § | <br><br><br><br>CASE NO. 3:21-CV-254-B-BK<br>(CRIMINAL NO. 3:14-CR-266-B-16) |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Movant Javier Guerra's *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition. As detailed herein, the motion should be **DENIED**.

**I. BACKGROUND**

In 2017, Guerra was charged in a third superseding indictment with two drug conspiracy counts (conspiracy to possess with intent to distribute methamphetamine and conspiracy to possess with intent to distribute cocaine) and one count for possession of a firearm in furtherance of a drug trafficking crime. Crim. Doc. 1992 at 3-5. Later that year, Guerra pled guilty pursuant to a plea agreement to a two-count superseding information that charged him with a single drug conspiracy (conspiracy to possess with intent to distribute and to distribute 500 grams of a mixture or substance containing a detectable amount of cocaine) and conspiracy to launder monetary instruments and, in 2018, he was sentenced to 480 months' imprisonment on each count to be served concurrently. Crim. Doc. 2107 (*Information*); Crim. Doc. 2298 (*Judgment of*

*Conviction*).  He filed a direct appeal that was dismissed as frivolous on November 13, 2019.  Crim. Doc. 2407.

Guerra timely filed the instant § 2255 motion on February 4, 2021, with a brief in support and an affidavit.  Doc. 2; Doc. 3 (brief and affidavit).  He challenges the voluntariness of his guilty pleas, asserts ineffective assistance of counsel, and requests an evidentiary hearing.  Doc. 2 at 4-5; Doc. 3.  The Government filed a response in opposition, arguing that Guerra's guilty plea was knowing and voluntary, and that he failed to show that counsel rendered deficient performance or that he was prejudiced.  Doc. 11.  Guerra filed a reply, arguing that the Government's response was inadequate and requesting an evidentiary hearing.  Doc. 14.

Upon review, the Court finds that Guerra is not entitled to relief.  Thus, his § 2255 should be denied.

## II.  ANALYSIS

### A.  Applicable Standard

To succeed on a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Failure to establish either deficient performance or prejudice defeats the claim.  *Id.* at 697.  To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id*. at 687.  The proper measure of attorney performance is reasonableness under prevailing professional norms.  *Id*. at 688.  That said, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id.*

Moreover, to demonstrate prejudice in the context of a guilty plea, the movant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The movant bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Further, to be constitutionally valid, a guilty plea must be knowingly, voluntarily, and intelligently made. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). In determining the voluntariness of a plea, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel. *United States v. Shepherd*, 880 F.3d 734, 740-41 (5th Cir. 2018); *see also Boykin v. Alabama,* 395 U.S. 238, 244 (1969) (finding that to be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence").

When challenging the validity of his guilty plea, a defendant ordinarily may not refute his sworn testimony given at the plea hearing while under oath. *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998). A defendant must also overcome the presumption of regularity and "great evidentiary weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether plea is entered voluntarily and knowingly).

**B. Guerra's Claims Are Unsupported**

Guerra asserts that his guilty plea was involuntary because his defense counsel, Michael Todd, did not advise him "that the methamphetamine from the dismissed counts would be attributed to him at sentencing[.]" Doc. 2 at 4. He avers that he "was placed in the extraordinary

position of having facts[,] which may be central to the amount of punishment he w[ould] receive, not presented to him before he entered a guilty plea." Doc. 3 at 12. Guerra maintains that his plea was based on the "reasoning that the drug in [the] dismissed counts[] would not be used to calculate his final sentence." Doc. 3 at 13-14. He states that the only "factual basis he reviewed with counsel . . . was based on the possession and distribution of cocaine, not . . . the methamphetamine from the dismissed count." Doc. 3 at 12.  Thus, he contends that the "lack of information" from both counsel and the Court rendered his plea unknowing and unintelligent. Doc. 3 at 12. According to Guerra, "[h]ad a complete explanation of the guidelines and relevant conduct been presented [to him] pretrial, [he] would not have pled guilty." Doc. 13 at 12.

Relatedly, Guerra alleges that defense counsel rendered ineffective assistance during the plea proceedings. He contends that counsel "fail[ed] to explain how the guidelines relevant conduct and enhancements would affect his final sentence before advising Guerra to plead guilty." Doc. 2 at 5; *see also* Doc. 3 at 15. Also, he argues that "[t]he only assurances [he] received during the change of plea hearing . . . was that he would be sentenced, as per the plea agreement and with the stipulated drugs presented by the government in their factual basis[.]" Doc. 3 at 15. According to Guerra, "[t]he plea and Todd's advice was that the sentence was based on the facts of the change of plea." Doc. 3 at 16. He thus maintains that his "change of plea was based on an incomplete explanation of the guidelines and their application," and "[h]ad there been other explanations of other drug quantities and charges not discussed nor explained in the change of plea, Guerra would not have pled guilty." Doc. 3 at 16. Further, he maintains that "[i]t was not until the sentencing hearing, that counsel acknowledged for the first time that the methamphetamine was going to be calculated for sentencing purposes." Doc. 3 at 18.

Guerra's own sworn statements at rearraignment contradict his current assertions that his

guilty plea was induced by misinformation, namely, that the methamphetamine in the dismissed count would not be attributed to him as part of his relevant conduct. At rearraignment, Guerra repeatedly assured the Court under oath that he was not relying on any promises or assurances of any kind in pleading guilty, other than those contained in the written plea agreement. Crim. Doc. 2206 at 16-18. Also, he confirmed his understanding that by pleading guilty, he would be subject to the maximum period of imprisonment of 40 and 20 years, respectively, on each count. Crim. Doc. 2206 at 23-24. Moreover, Guerra entered his guilty plea before the district judge who advise that she did not "know what [his] sentence will be" and that it would be able to determine the guideline range only after considering the Presentence Report ("PSR") and any objections. Crim. Doc. 2206 at 24. The Court then explained in detail the preparation of the PSR and the calculation of the guideline range. Crim. Doc. 2206 at 24-25. Further, the Court explicitly cautioned Guerra that "by pleading guilty . . . you are opening yourself up to the maximum . . . 40 years on the one count and 20 on the other," and there is "nothing being promised to you ahead of time. You pled to these charges. These are the penalties." Crim. Doc. 2206 at 25-26.

  Guerra advised the Court that he had thoroughly reviewed the factual resume with his counsel and understood it, and that the facts contained therein were true and correct. Crim. Doc. 2206 at 29-32. Guerra also affirmed that he was fully satisfied with his counsel's advice and representation. Crim. Doc. 2206 at 6.

  By his Plea Agreement—which he likewise confirmed under oath that he signed only after reading it carefully and discussing it with his counsel—Guerra confirmed his understanding that (1) the Court would determine the sentence after considering the advisory Sentencing Guidelines, (2) no one, including defense counsel, "can predict with certainty the outcome of the

Court's consideration of the guidelines in this case," (3) the Court, in its discretion, could sentence Guerra up to the statutory maximum penalty, (4) his guilty plea was "freely and voluntarily made" and not the result of threats or promises other than those set out in the plea papers, and (5) "[t]here ha[d] been no guarantees or promises from anyone as to what sentence the Court will impose." Crim. Doc. 2109 at 4.6; Crim. Doc. 2206 at 10-11. Likewise, Guerra admitted in the plea agreement that he had "thoroughly reviewed all legal and factual aspects of this case with [his] lawyer and [was] fully satisfied with that lawyer's legal representation." Crim. Doc. 2109 at 7.

      Contrary to Guerra's current assertions, neither the plea agreement nor the factual resume limited the relevant drug quantity. While Guerra stipulated in the Factual Resume that he conspired to possess with intent to distribute and to distribute 500 grams or more of cocaine, he also specified that the factual resume was "not intended to be a complete accounting of all the facts and events related to the offense charged in this case" but was "to demonstrate that a factual basis exists to support [Guerra's] guilty plea . . . ." Crim. Doc. 2110 at 3, 6. In the plea agreement, Guerra also "agree[d] that the factual resume . . . is true and will be submitted as evidence," Crim. Doc. 2109 at 2, and that "[n]o promises or representations have been made by the United States except as set forth in writing in this plea agreement," Crim. Doc. 2109 at 9.

      It is also telling that while Guerra had ample time—nearly ten months between rearraignment and his sentencing hearing—to advise the Court that his guilty plea was involuntary or that he was dissatisfied with defense counsel's conduct and the supposedly faulty information about his sentencing exposure, he did not do so. Similarly at sentencing, he voiced no objection about the voluntariness of his guilty plea or his counsel's advice and allegedly deficient performance. Crim. Doc. 2398.

At the daylong sentencing hearing, both the Government and Guerra presented and cross examined witnesses and the court admitted into evidence numerous Defense exhibits. Crim. Doc. 2398 at 17-235. Ultimately, the Court overruled Guerra's objection and found that the methamphetamine distribution was all "foreseeable conduct," Crim. Doc. 2398 at 15-16, and the Government has "established the relevant conduct." Crim. Doc. 2398 at 235-39. The Court emphasized that "[t]he evidence is overwhelming that the defendant is a kingpin, a drug pusher of the highest degree, . . . he's up there with regard to methamphetamine and cocaine, from at least 2010 through on or about 2015." Crim. Doc. 2398 at 239

Further, when given the opportunity to address the Court *after* counsel's objection was overruled and the Court stated the range he was facing, Guerra apologized "for bringing this mess to your courtroom and for wasting [the court's] time," admitted his guilt, and asked for leniency. Crim. Doc. 2398 at 254-56. These circumstances strongly suggest Guerra's claims are driven by "buyer's remorse" rather than any defect in the guilty plea procedure.

Additionally, Guerra's reliance on *Henderson v. Morgan*, 426 U.S. 637 (1976), in support of his argument that his guilty plea was involuntary, is inapposite. Unlike the petitioner in *Henderson*, Guerra was aware of the elements of his offense and the maximum sentence as confirmed by his plea agreement and rearraignment transcript. *See Henderson*, 426 U.S. at 647 (finding guilty plea was involuntary because the petitioner had not receive adequate notice of the offense to which he pleaded guilty).

In sum, Guerra presents only self-serving, *post hoc* assertions in his § 2255 motion and affidavit—not "contemporaneous evidence"— that his guilty plea was involuntary and that he would not have pled guilty and would have gone to trial but for counsel's supposed misinformation that the methamphetamine would not be counted as relevant conduct. However,

such statements are belied by the record and insufficient to contradict Guerra's testimony at his plea hearing. *See Lee v. United States*, ___ U.S. ___, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."); *United States v. Crain*, 877 F.3d 637, 650 (5th Cir. 2017) (explaining that "self-serving post hoc assertions about how [the defendant] would have pled" do not negate the contemporaneous comments at the plea hearing).

As stated previously, sworn statements made in open court are entitled to a strong presumption of truthfulness. *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Consequently, a defendant will not be permitted to contradict testimony given under oath at arraignment and sentencing. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (requiring movant to produce "independent indicia of the likely merit of [his] allegations" to overcome re-arraignment testimony and plea agreement, which refuted his allegations); *United States v. Guzman*, No. 19-10783, 2021 WL 4610124, at *3 (5th Cir. Oct. 6, 2021) (per curiam) (rejecting *post hoc* assertion that the defendant would have proceeded to trial but for counsel's alleged errors based on defendant's sworn statements at re-arraignment and sentencing).

For the foregoing reasons, the Court concludes that Guerra has failed to meet his burden of establishing that his guilty plea was not knowing and voluntary and that he was prejudiced by counsel's allegedly deficient performance. Thus, Guerra's claims fail.

### III. EVIDENTIARY HEARING

Guerra contends that he is entitled to an evidentiary hearing to resolve his ineffective

assistance claim because he submitted an affidavit and the Government did not obtain one from his defense counsel. Doc. 14 at 1-2, 7. However, "[w]hen the files and records of a case make manifest the lack of merit of a Section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981). "A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013) (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)). "[W]hen a defendant's allegations contradict his sworn testimony given at a plea hearing, [courts] have required more than mere contradiction of his statements, typically specific factual allegations supported by the affidavit of a reliable third person." *Reed*, 719 F.3d at 373 (internal quotation marks and citations omitted).

Again, Guerra submits only self-serving, *post-hoc* assertions in his affidavit. Because Guerra's claims lack merit for reasons wholly supported by the record, as previously noted, no evidentiary hearing is required. *See United States v. McClinton*, 782 F. App'x 312, 314-15 (5th Cir. 2019) (per curiam) (affirming denial of evidentiary hearing where "contemporaneous evidence" at rearraignment conclusively negated movant's *post hoc* assertions); *Guzman*, 2021 WL 4610124, at *4 (affirming denial of evidentiary where Defendant's *post hoc* assertions about counsel's alleged errors were supported only by his own affidavit, which was "inconsistent with the bulk of the record—including his prior sworn testimony—before the court").

Moreover, Guerra's reliance on *United States v. Sauzo*, 768 F. App'x 284, 285 (5th Cir. 2019), is misplaced. Doc. 14 at 2. Unlike in *Sauzo*, this Court does *not* deny Guerra's sworn allegations summarily without "any response by [] trial counsel *or* a rearraignment transcript . . . ." *Sauzo*, 768 F. App'x at 285 (emphasis added). As previously noted, the Government filed

a response and the record contains both the rearraignment and sentencing transcripts, which plainly contradict Guerra's self-serving affidavit.

## IV. CONCLUSION

Accordingly, Guerra's § 2255 motion should be **DENIED** and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** September 25, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).